UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ATCHAFALAYA BASINKEEPER, ET AL.

VERSUS

U.S. ARMY CORPS OF ENGINEERS

CIVIL ACTION

NO. 18-23-SDD-EWD

**RULING AND ORDER**

Before the Court is a Motion for Leave to Amend Complaint (the "Motion to Amend")[1] filed by Atchafalaya Basinkeeper, Louisiana Crawfish Producers Association-West, Gulf Restoration Network, Waterkeeper Alliance, and Sierra Club and its Delta Chapter ("Plaintiffs"). The Motion to Amend is opposed by Bayou Bridge Pipeline, LLC ("Bayou Bridge")[2] and the United States Army Corps of Engineers (the "Corps").[3] Plaintiffs have filed a Reply.[4] For the reasons set forth herein, the Motion to Amend is **DENIED**[5] as futile.

I.   Background

This matter arises out of the Corps' issuance of a permit under Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344, and Sections 10 and 14 of the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 403, 408, allowing Bayou Bridge to build a 162–mile crude oil pipeline from Lake Charles, Louisiana to terminals near St. James. Portions of the pipeline will cross the Atchafalaya Basin (the "Basin"), affecting wetlands.

---

[1] R. Doc. 127.

[2] R. Doc. 142.

[3] R. Doc. 144.

[4] R. Doc. 148.

[5] A motion for leave to amend is not among the motions expressly excluded from direct ruling by a magistrate judge under 28 U.S.C. § 636(b)(1)(A). Further, although the Fifth Circuit has not ruled on the issue, the weight of authority appears to be that motions for leave to amend are generally considered nondispositive in nature. *See, e.g.*, *Bona Fide Demolition and Recovery, LLC v. Crosby Construction Co. of La., Inc.*, 07-3115, 2010 WL 4176858, *1 (E.D. La. Oct. 20, 2010) (collecting cases). Accordingly, the undersigned issues a Ruling and Order on the Motion to Amend.

## A. The Permitting Process

In this case, as explained by the Fifth Circuit, "[i]n discharging its permit responsibilities, the Corps was required to implement the National Environmental Policy Act ('NEPA'), a procedural statute, which requires certain steps before federal agencies may approve projects that will affect the environment."[6] In order to comply with the NEPA, an agency first prepares an environmental assessment ("EA").[7] "An EA should be a 'concise public document ... that serves to ... [b]riefly provide sufficient evidence and analysis for determining whether to prepare an [environmental impact statement].'"[8] "If the agency finds during this process that the proposed action will result in 'significant' effects to the environment, then it must also prepare an environmental impact statement ('EIS'). If the agency finds that the project will not have a significant impact, it will conclude with a 'Finding of No Significant Impact' ('FONSI') and no EIS will be required."[9] Here, "the Corps authored two EAs, one under the Rivers and Harbors Act (the '408 EA'), and the other under Section 404 of the CWA (the '404 EA'). Based on those assessments, which together run over two hundred pages, plus appendices of nearly 200 pages more, the Corps determined that an EIS would not be necessary for this project and issued a FONSI."[10]

## B. Procedural Background

On January 11, 2018, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief (the "Original Complaint") against the Corps challenging the Corps' issuance of the permit as arbitrary

---

[6] *Atchafalaya Basinkeeper v. United States Army Corps of Engineers*, 894 F.3d 692, 695 (5th Cir. 2018).

[7] *Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 677 (5th Cir. 1992).

[8] *Atchafalaya Basinkeeper*, 894 F.3d at 695 (quoting *O'Reilly v. U.S. Army Corps of Eng'rs*, 477 F.3d 225, 228 (5th Cir. 2007) (quoting 40 C.F.R. § 1508.9(a)).

[9] *Id.* (citing *O'Reilly*, 477 F.3d at 228; 42 U.S.C. § 4332(C); *Sabine River Auth.*, 951 F.2d at 677).

[10] *Id.*

and capricious under the Administrative Procedure Act ("APA").[11] Thereafter, Plaintiffs filed a Motion for Preliminary Injunction, seeking to enjoin construction of the pipeline through the Atchafalaya Basin pending a merits challenge to the permit.[12] Following a two-day preliminary injunction hearing and the submission of post-hearing briefs,[13] this Court granted Plaintiff's Motion for Preliminary Injunction, finding, *inter alia*, that Plaintiffs demonstrated a likelihood of success on their claim that the mitigation measures required by the Corps failed to adequately account for the loss of cypress-tupelo swamp along the pipeline right of way through the Basin.[14] In particular, this Court found that the Corps inappropriately required use of a combination of "in kind" (*i.e.*, cypress-tupelo swamp) and "out-of-kind" (*i.e.*, bottomland hardwood) mitigation bank credits without providing "any rational explanation as to how the mitigation choices" served the regulatory goal of "replac[ing] lost functions and services."[15] As this Court explained:

> According to the Corps, 519.7 credits were required to mitigate for impacts to Bottomland Hardwoods (BLH), and 1499 credits were required to mitigate for impacts to Cypress/Tupelo swamp. Yet, only 434.5 Cypress/Tupelo swamp credits were actually purchased (1064.5 less than the number of credits required) and 1584.7 of BLH credits were purchased. In a footnote, the Corps discloses that "1064.7 BLH credits were purchased as out-of-kind/in-basin credits to offset impacts to bald cypress/tupelo swamp." Based on the compensatory mitigation imposed, the Corps concluded that the "effect" on the wetlands was "neutral as a result of mitigative action." Despite this conclusion, there is not an iota of discussion,

---

[11] R. Doc. 1. Bayou Bridge and Stupp Bros., Inc. d/b/a Stupp Corporation ("Stupp") subsequently intervened in these proceedings. R. Docs. 20 & 42.

[12] R. Doc. 15.

[13] *See*, R. Docs. 73, 74, 75, & 76.

[14] R. Doc. 86, pp. 34- 44. This Court also found that Plaintiffs demonstrated a likelihood of success on their claim that the Corps failed to adequately consider historical noncompliance by other pipelines. *See*, R. Doc. 86, pp. 45-51. The Fifth Circuit subsequently found that this Court's "concern about cumulative effects based on the alleged past noncompliance with Corps permit conditions" was misplaced. *Atchafalaya Basinkeeper*, 894 F.3d at 704. The allegations in Plaintiffs' proposed Amended Complaint are not directed to issues of historical noncompliance by other pipelines.

[15] R. Doc. 86, pp. 37-38 (citing 33 C.F.R. 332.3(b)(1)). *See also*, R. Doc. 86, p. 41 ("There is no analysis [in the Corps § 404 EA] explaining how out-of-kind mitigation addresses these important functions.").

3

> analysis, or explanation how BLH credits mitigate the loss of function and value of the cypress/tupelo swamp impact.[16]

Based on the above perceived inadequacies regarding the mitigation plan, this Court found "that the Corps failed to sufficiently justify its reliance on mitigation in reaching the FONSI. There is simply no assurance in the EAs that the mitigation plan will be successful in accomplishing the restorative goals of the CWA. Plaintiffs have demonstrated a likelihood of success on the merits regarding mitigation."[17]

The Corps, Bayou Bridge, and Stupp appealed, and on July 6, 2018, the Fifth Circuit vacated the District Court judgment and remanded for further proceedings.[18] With respect to the mitigation efforts required by the Corps for loss of cypress-tupelo swamp, the Fifth Circuit considered whether the Corps properly applied CWA regulations when the Corps approved the purchase of "(a) in-kind mitigation credits, i.e. cypress-tupelo acreage within the watershed and, when those were exhausted, (b) out-of-kind credits of bottomland hardwood acreage within the watershed to compensate for the project's impact."[19] In considering the in-kind and out-of-kind mitigation credits required by the Corps, the Fifth Circuit found that the language of the relevant regulation, 33 C.F.R. § 332.3, "set up a plain 'hierarchy' strongly approving of mitigation banks – as opposed to the Appellants' proffered clean-up by Bayou Bridge of spoil banks created by other pipeline builders long ago…."[20] Further, the Court confirmed that "the Corps sufficiently documented how those credits serve the Basin's aquatic resource needs"[21] based on the Corps' use

---

[16] R. Doc. 86, p. 43.

[17] R. Doc. 86, p. 45.

[18] *Atchafalaya Basinkeeper v. United States Army Corps of Engineers*, 894 F.3d 692 (5th Cir. 2018).

[19] *Id*. at 699.

[20] *Id*. at 700.

[21] *Id*. at 700.

of the Louisiana Wetland Rapid Assessment Method ("LRAM"), a functional assessment tool used to determine the amount of compensatory mitigation required. Accordingly, the Fifth Circuit found that "the record suffices to supply a 'rational connection' between the facts about the project and its CWA implications and the ultimate decision rendered. The Corps' decision was thus not 'arbitrary and capricious.'"[22]

Following the Fifth Circuit's ruling, Plaintiffs filed the instant Motion to Amend.[23] Plaintiffs seek to file a proposed First Amended Complaint for Declaratory and Injunctive Relief (the "Amended Complaint")[24] to include "an 'as applied challenge to [the Corps'] policy governing wetlands mitigation, known as [LRAM], to the extent that the policy was relied upon to permit [the] decision challenged in this case."[25] Plaintiffs characterize the Fifth Circuit's decision, specifically, the Court's "endorsement of LRAM as supplying the analysis" that the District Court found missing, as a "changed circumstance" justifying amendment[26] and assert that "events have unfolded in such a way that an 'as applied' challenge to LRAM may be necessary in order to challenge the mitigation decision in this instance. The amendment simply addresses a partially changed landscape of this case in light of the Fifth Circuit majority opinion invoking LRAM."[27] In opposition to Plaintiffs' Motion to Amend, both Bayou Bridge and the Corps assert, *inter alia*, that allowing the proposed Amended Complaint would be futile in light of the Fifth Circuit's opinion.[28]

---

[22] *Id*. at 703.

[23] R. Doc. 127.

[24] R. Doc. 127-1.

[25] R. Doc. 127, p. 1.

[26] R. Doc. 127, p. 4.

[27] *Id*.

[28] *See*, R. Doc. 142, p. 6 ("Plaintiffs' proposed amended complaint is nothing more than an attempt to dodge the Fifth Circuit's opinion and relitgate issues (with the benefit of hindsight) that have already been resolved."); p. 3 ("plaintiffs

5

## II. Law and Analysis

### A. Standard for Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleadings "shall be freely given when justice so requires."[29] The Federal Rules permit liberal amendment of pleadings, and Rule 15(a) favors granting leave to amend. However, "leave to amend is by no means automatic" and the "decision lies within the sound discretion of the district court."[30] A court should consider five factors to determine whether to grant a party leave to amend a complaint: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment.[31] Absent any of these factors, the leave sought should be freely given.[32] Regarding the fifth factor, an amendment is "futile" if it would fail to survive a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted.[33] The Fifth Circuit has noted that "[w]hen futility is advanced as the reason for denying an amendment to a complaint, the court is usually denying leave because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint."[34]

---

are making an impermissible collateral attack on the Fifth Circuit's ruling…."); R. Doc. 144, p. 5 ("the Fifth Circuit has already acknowledged and rejected the argument that Plaintiffs seek to present in Paragraph 168 of the proposed amendment. It would be futile to allow an amendment to Plaintiffs' complaint that is contrary to the Fifth Circuit's decision.").

[29] Fed. R. Civ. P. 15(a).

[30] *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (citations omitted).

[31] *Smith v. EMC Corp*, 393 F.3d 590, 595 (5th Cir. 2004) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[32] *Smith*, 393 F.3d at 595.

[33] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

[34] *Jamieson by and through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985). Plaintiffs cite this standard in their Reply brief. R. Doc. 148, p. 2.

**B. The Fifth Circuit's Determination that the Corps Sufficiently Documented the Requirement of Out-of-Kind Mitigation Credits Cannot Be Further Challenged in This Court.**

**1. Law of the Case and the Scope of this Court's Review**

"The law-of-the-case doctrine posits that ordinarily 'an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on subsequent appeal.'"[35] "The proscription covers issues [the higher court has] decided expressly and by necessary implication…."[36] The "mandate rule," which is a specific application of law-of-the-case principles, compels that "[a]bsent exceptional circumstances," a district court on remand must comply "with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court."[37] The Fifth Circuit has repeatedly explained that a district court on remand "must obey the letter and the spirit of the earlier decision of an appeals court."[38] "In implementing the mandate, the district court must 'tak[e] into account the appellate court's opinion and the circumstances it embraces.'"[39]

In the Fifth Circuit, "a decision on interlocutory appeal of the grant of a preliminary injunction constitutes law of the case as to legal determinations."[40] Although factual

---

[35] *U.S. v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004) (citing *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir.2002) cert. denied sub nom, *Matthews v. United States*, 538 U.S. 938, 123 S.Ct. 1604, 155 L.Ed.2d 341 (2003) (citation omitted)).

[36] *Id*. (citing *Crowe v. Smith*, 261 F.3d 558, 562 (5th Cir.2001) (citation omitted)). *See also*, *Medical Center Pharmacy v. Holder*, 634 F.3d 830, 835 (5th Cir. 2011) ("Conversely, an issue that is not expressly or implicitly decided on appeal does not become part of the law of the case.").

[37] *Lee*, 358 F.3d at 321.

[38] *Holder*, 634 F.3d at 834, n. 2; *see also*, *Lee*, 358 F.3d at 321 ("a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.") (internal citations and quotation omitted).

[39] *Lee*, 358 F.3d at 312 (citing *Sobley v. Southern Natural Gas Co.*, 302 F.3d 325, 333 (5th Cir.2002) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 364 (5th Cir.2002) (internal citation omitted))).

[40] *Gaalla v. Brown*, 460 Fed. Appx. 469, 476 (5th Cir. 2012) (unpublished) (citing *Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 3 F.3d 877, 881 (5th Cir. 1993)).

determinations made during an interlocutory appeal of a preliminary injunction will not often establish law of the case,[41] the fact-finding capacity of any court within the context of judicial review of agency actions pursuant to the APA is "typically unnecessary."[42] Further, as explained by the Fifth Circuit in this case, under the APA, "a court will uphold an agency action unless it finds it to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"[43] The Fifth Circuit has described this as "a demanding standard"[44] and the Supreme Court has explained:

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.[45]

---

[41] *Royal Ins.*, 3 F.3d at 881 ("As to factual determinations, however, an interlocutory appeal of a preliminary injunction often will not establish law of the case.").

[42] *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (explaining that within the context of judicial review of agency action under the APA, "[t]he reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry" and "[t]he factfinding capacity of the district court is thus typically unnecessary to judicial review of agency decisionmaking.").

[43] *Atchafalaya Basinkeeper*, 894 F.3d at 696 (citing 5 U.S.C. § 706(2)(A) & *Coastal Conservation Assoc. v. U.S. Dept. of Commerce*, 846 F.3d 99, 110-111 (5th Cir. 2017)).

[44] *Id*. at 697.

[45] *Id*. at 697 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The Fifth Circuit repeatedly referenced the deferential standard due agency decisions in its decision vacating the preliminary injunction. *Id*. at 698 ("Bearing in mind that the Corps' NEPA obligation was limited to discussing relevant factors and explaining its decision, not to reaching conclusions that this court or the district court approves…."); p. 699 ("the Corps' path could 'reasonably be discerned' from the EAs and other publicly available documents and should have been upheld."); p. 703 ("the record suffices to supply a 'rational connection' between the facts about the project and its CWA implications and the ultimate decision rendered. The Corps' decision was thus not 'arbitrary and capricious.'").

8

### 2. Plaintiffs' Proposed "As-Applied" Challenge Has Been Considered and Rejected by the Fifth Circuit

Plaintiffs contend that "an 'as applied' challenge to LRAM may be necessary to challenge the mitigation decision in this instance."[46] Plaintiffs assert that they "intend to show that the LRAM itself is arbitrary and capricious as applied in this instance, since the Corps never actually analyzed how LRAM would operate across different resource types when it adopted the policy."[47] Although Plaintiffs' Original Complaint and Plaintiffs' arguments supporting their Motion for Preliminary Injunction were focused on the permit decision itself, and Plaintiffs' proposed amendment arguably presents a different claim challenging the underlying basis for reaching that permitting decision, the undersigned finds that the Fifth Circuit has already addressed the Corps' use of the LRAM methodology such that Plaintiffs' proposed amendment would be futile.

Per their Original Complaint, Plaintiffs alleged that "[t]he out-of-kind mitigation does not compensate for the significant environmental harm to cypress-tupelo swamps in the Atchafalaya Basin"[48] and that:

> The Corps' regulations set an exceedingly high bar for out-of-kind mitigation, observing that in-kind mitigation is "preferable." 33 C.F.R. § 332.3(c)(1). Under the regulations, out of kind mitigation can only be authorized where the district engineer determines, using a specific "watershed approach," that out of kind mitigation will best serve the needs of the watershed. *Id.* § 332.3(c)(2). Such finding must be documented in the administrative record for the action. Moreover, the regulations set the bar even higher for "difficult to replace" aquatic resources, a characterization that fits the forested swamps of the Atchafalaya. However, no such analysis ever took

---

[46] R. Doc. 127, p. 4.

[47] R. Doc. 127, p. 4. *See also*, R. Doc. 148, p. 3 ("Pursuant to the CWA regulations, the Corps is required to conduct such an analysis to determine whether compensatory mitigation will replace lost ecological functions and services when mitigating with a different resource type. The administrative record for LRAM will either show, or not show, that the Corps conducted this analysis in developing its assessment methodology. If it did not, then LRAM itself is arbitrary and capricious because the Corps failed to conduct the analysis required by 33 C.F.R. § 332.3(e).").

[48] R. Doc. 1, ¶ 67.

place before the Corps signed off on out-of-kind mitigation that was physically distant from the impact site.[49]

Although Plaintiffs argued in a footnote in support of their Motion for Preliminary Injunction that the LRAM was a "controversial and untested method of calculating mitigation credits" that "cannot serve as a substitute for the careful case-by-case analysis, using a 'watershed approach' as required under the CWA regulations for out-of-kind mitigation,"[50] Plaintiffs did not focus on the LRAM. As noted by the Fifth Circuit, "because the Appellees did not highlight the Corps' use of the LRAM methodology, the district court was not attuned to the agency's reasoning about out-of-kind credits."[51]

While not placed at the forefront of Plaintiffs' arguments before the district court, the Corps' use of the LRAM assessment to determine mitigation requirements *was* placed directly before the Fifth Circuit on appeal of the preliminary injunction ruling. In their opening brief, Bayou Bridge and Stupp ("Appellants") asserted that "[t]o determine the required amount and type of mitigation-bank credits, the Corps applied the Louisiana Wetland Rapid Assessment Method"[52] and argued LRAM supplied the "explanation for how out-of-kind bottomland hardwood mitigation-bank credits could offset the impacts to cypress-tupelo swamp."[53] Appellants set forth in four pages of their opening brief the method by which LRAM was used to determine the amount of mitigation credits required[54] and asserted:

> [O]ut-of-kind mitigation-bank credits are appropriate ways to mitigate because LRAM accounts for their potentially lower

---

[49] R. Doc. 1, ¶ 144.

[50] R. Doc. 15-1, p. 29, n. 15.

[51] *Atchafalaya Basinkeeper*, 894 F.3d at 700.

[52] *Atchafalaya Basinkeeper et al. v. U.S. Army Corps of Engineers*, No. 18-30257, United States Court of Appeals for the Fifth Circuit ("Appellate Record"), Document 00514422615, April 2, 2018 Opening Brief, p. 13.

[53] Appellate Record, Document 00514422615, April 2, 2018 Opening Brief, p. 23.

[54] *Id*. at pp. 32-36.

mitigation potential by adjusting the acreage required at the bank to keep the credits – that is, aquatic functions gained – constant. Here, the Corps undisputedly required LRAM credits equal to LRAM debits, which necessarily includes a conclusion, under the accepted LRAM methodology, that those credits sufficed to offset lost aquatic functions *even though* some of those credits were out-of-kind.[55]

In response, Plaintiffs recognized that Appellants "focus[ed] the bulk on their argument" on the LRAM,[56] and argued, *inter alia*, that:

> LRAM does not justify this mitigation decision in any event. To the contrary, citing § 332.3(e), LRAM explicitly states that its intent is to provide for *in-kind* compensatory mitigation. "The focus on in-kind habitat replacement is to assure similar functions and services that are lost at an impact site are gained at a mitigation site. Following that direction, the document explicitly declares cypress-tupelo swamps to be of a different "kind" than bottomland hardwoods (and four other categories of wetlands present in Louisiana). LRAM does not provide for out-of-kind mitigation in any respect, for example, by including it as a factor to be considered in the calculation of credits. In short, it appears that the Corps misapplied LRAM by allowing credits generated for in-kind mitigation to be used out-of-kind, in violation of both 33 C.F.R. § 332.3(e) as well as LRAM itself.[57]

Within the context of these specific challenges to Corps' use of LRAM and out-of-kind mitigation bank credits,[58] the Fifth Circuit considered the LRAM in detail and explained that "[t]he

---

[55] *Id*. at p. 33.

[56] Appellate Record, Document 00514428039, Plaintiff's April 12, 2018 Brief, p. 29.

[57] *Id*. at p. 31.

[58] Bayou Bridge argues that "plaintiffs' supposedly new claim challenging LRAM is really an argument in support of their existing claim challenging the Corps' choice of mitigation in the final agency action of a Section 404 permit. The bottom line is that the Corps did apply LRAM when issuing the 404 Permit, and plaintiffs specifically challenged that application when they attacked the EA." R. Doc. 142, p. 7. Similarly, the Corps argues that "the fact that the appellate court has already considered the role of the LRAM in the Corps' determination regarding out-of-kind mitigation shows that the proposed Paragraph 168 does not assert a new claim, but at most states a different argument to support the claim that the Corps' determination regarding the mitigation required by the Permit was arbitrary and capricious. Thus, to the extent that the Plaintiffs believe that they have a claim that survives the Fifth Circuit's decision, any supporting argument can be presented as part of their existing claim challenging the adequacy of the Corps' mitigation plan." R. Doc. 144, p. 5. The undersigned agrees, especially in light of the Fifth Circuit's discussion regarding LRAM in the context of the Corps' mitigation decision, that arguments regarding out-of-kind mitigation credits were subsumed within Plaintiffs' original mitigation challenge.

LRAM consists of nearly 50 pages addressing all types of wetlands found in Louisiana, including bald cypress/tupelo swamp and bottomland hardwood."[59] The Court explained that the LRAM

> uses the prescribed "watershed approach," and it assigns a numerical value to wetlands that will be affected by a Corps permit. The value scores the "lost aquatic functions and services" and the acreage affected by the permit, and it identifies mitigation banks in the same watershed where credits can be purchased to offset any loss. Using scientific data and numerous references, the LRAM scores wetlands impact based on factors including (1) the number of acres affected by the prospective permitted project; (2) how difficult particular wetlands are to replace; (3) habitat condition; (4) hydrologic condition; (5) negative human influences; and (6) permanent, partial or temporary loss. The LRAM assigns values to the quality of the wetlands and of the mitigation banks, converts the values into credits, and determines on a watershed basis how many acres in mitigation banks must be purchased by the prospective permittee.[60]

After setting out the method by which the LRAM scores wetlands and determines mitigation requirements, the Fifth Circuit explained that "the use of scientific methodology like that contained in the LRAM is subject to particular judicial deference"[61] and that "[n]ot to defer to the LRAM would be an error by this Court."[62] The Fifth Circuit then explained that the Corps was entitled to require the purchase of bottomland hardwood credits within the Basin watershed after all available cypress/tupelo swamp credits had been purchased and that "[t]he LRAM, properly read and understood, measures and scales precisely the aquatic functions and services characteristic of each type of Louisiana wetland and corresponding mitigation banks containing those wetlands. The scales differed for bottomland hardwoods and cypress/tupelo swamp on the basis of factors noted above."[63]

---

[59] *Atchafalaya Basinkeeper*, 894 F.3d at 701.

[60] *Id*. at 701.

[61] *Id*. (citing *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 377-378 (1989)).

[62] *Id*.

[63] *Id*.

Plaintiffs focus on the next sentence in the Fifth Circuit's opinion, wherein the Court states that "[a]ppellees have not challenged the scientific validity of the LRAM-based analysis and calculations"[64] to support their assertion that an "as-applied" challenge to LRAM "may be necessary in order to challenge the mitigation decision in this matter."[65] However, the Fifth Circuit provided considerable analysis of the use of out-of-kind mitigation credits and whether the use of LRAM adequately accounted for lost aquatic functions and services in its ruling.[66] In particular, the Fifth Circuit found that "[i]n evaluating this project, the Corps conducted careful research; hewed to the governing regulations and the scientifically based LRAM tool; conditioned the permit in accordance with evolved best management practices; required purchases of acreage within mitigation banks that will provide the optimal replacement of lost aquatic functions and services; and produced two significantly reasoned EAs."[67]

Per their proposed Amended Complaint, Plaintiffs assert that the "LRAM does not authorize out-of-kind mitigation" and that the Corps "provided no analysis of watershed conditions, or tools or other metrics that would allow LRAM to account for watershed conditions and whether such mitigation would serve the needs of the watershed."[68] It appears that these are the same arguments considered and rejected by the Fifth Circuit on appeal. In light of the deferential standard accorded to any agency decision under the APA, the deference that must be

---

[64] *Id*. at 701-702.

[65] R. Doc. 127, p. 4.

[66] That this issue was at the forefront of the Fifth Circuit's consideration is evidenced by Judge Reavley's dissent, wherein Judge Reavley asserts that "[t]he LRAM's ratio itself does not factor in the resource type purchased on the back end. So, lest we assume that the LRAM's calculated acreage is entirely fungible across *all* resource types – something no party or the court goes so far as to suggest – there must be something else in the LRAM to translate impacts from one resource to another (in this case, to justify the one-to-one substitution of bottomland hardwood for cypress tupelo)."

[67] *Atchafalaya Basinkeeper*, 894 F.3d at 702-03.

[68] R. Doc. 127-2, ¶¶ 168 & 169.

afforded to the Corps' use of the LRAM (and the Fifth Circuit's statement that failure to defer to the LRAM would be an error), and the Fifth Circuit's considered ruling rejecting the arguments that Plaintiffs seek to raise in their proposed Amended Complaint, the undersigned finds that allowing such amendment would be futile.[69]

### III. Conclusion

For the reasons set forth herein, the Motion for Leave to Amend Complaint,[70] filed by Atchafalaya Basinkeeper, Louisiana Crawfish Producers Association-West, Gulf Restoration Network, Waterkeeper Alliance, and Sierra Club and its Delta Chapter, is **DENIED** as futile.

Signed in Baton Rouge, Louisiana, on February 11, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[69] *See*, *e.g.*, *Endo Pharmaceuticals, Inc. v. Roxane Laboratories, Inc.*, No. 13-cv-03288, 2014 WL 6390297, at * 2-4 (S.D.N.Y. Nov, 14, 2014) (considering "whether it would be futile for Roxane to assert defenses that have already been rejected by the Court of Appeals in the context of reviewing the denial of plaintiff's motion for a preliminary injunction" and denying motion to amend as futile and explaining "[i]f this court were to allow defendant to amend its answer to include express and implied license defenses, this court would inevitably be required to duplicate the Court of Appeals' efforts in interpreting the settlement and license agreement."). Because the undersigned finds that allowing Plaintiffs' proposed Amended Complaint would be futile, it is unnecessary to consider the timing and potential prejudice of the proposed amendment. Likewise, the undersigned does not consider the argument in opposition to amendment that "LRAM is not even reviewable in this Court" because it is not a final agency action. *See*, R. Doc. 142, p. 7; R. Doc. 144, pp. 5-6. The undersigned does note, however, that the parties seemed to agree in their briefing presented to the Fifth Circuit that LRAM was not a final agency action, *see*, Appellate Record, Document 00514428039, Plaintiffs' April 12, 2018 Brief, p. 30 ("LRAM is neither a regulation nor even a final policy."); Appellate Record, Document 00514438761, Appellants' April 19, 2018 Reply Brief, p. 13 ("These functional assessments need not be adopted as regulations because they do not have 'the force and effect of law', they are instead tools the Corps uses to implement its regulations."), although Plaintiffs argued to the contrary in support of their Motion to Amend. R. Doc. 148, pp. 5-7.

[70] R. Doc. 127.